WILLIAM STULL, APPELLANT, v. MATILDA P. GOOLD,
APPELLEE.

FILED MAY 15, 1914.    No. 17,617.

1. Quieting Title. In an action to quiet title, the rule is that the
"plaintiff must succeed only on the strength of his own title, and
not on the weakness of his adversary." 32 Cyc. 1329.

2. ———. "In an action having for its object the declaration of a
trust in land in favor of the plaintiff and the quieting of title in him,
it is incumbent upon the plaintiff to affirmatively establish an equitable
title in himself, and, if he fail to do so, the nature of defendant's
title, or the existence of any title in defendant, is immaterial." *Blodgett
v. McMurtry*, 39 Neb. 210.

3. ———. Where the plaintiff, one W. S., fails to establish his title to the
premises in question as against a deed made to the defendant, M. P.
G., by the receiver of the S. L. & T. Co., and she (said defendant) is
shown to have taken possession under the said deed, and to be in the
full and exclusive enjoyment thereof, the plaintiff is not entitled to
recover. The evidence examined, and found to sustain the judgment
of the district court.

APPEAL from the district court for Keith county:
HANSON M. GRIMES, JUDGE. *Affirmed.*

*Albert Muldoon,* for appellant.

*J. G. Beeler* and *H. A. Dano, contra.*

HAMER, J.

This is an action brought by William Stull against
Matilda P. Goold and John Doe, defendants. The petition
alleges that William Stull is the owner in fee of the
property in controversy, the northwest quarter of section
32, in township 13 north of range 39 west of the 6th P. M.,
in the county of Keith, state of Nebraska. He prays that
a certain alleged pretended deed executed by H. L. Goold,
as receiver of the State Loan & Trust Company, to Matilda
P. Goold be canceled and annulled, and that the title
shall be quieted in himself *as against said deed,* and for
such other and further relief as equity may require. The

defendant, Matilda P. Goold, claims through a deed from the receiver of the State Loan & Trust Company, dated May 25, 1909. The deed to her recites that H. L. Goold on the 29th day of September, 1896, was appointed and qualified as receiver of the State Loan & Trust Company, and the proceedings are copied into the deed showing such appointment. It is this deed which the plaintiff attacks. It is recited in it that the sum offered for the real estate is a good and sufficient sum, and that it is for the best interests of said State Loan & Trust Company, and the creditors thereof, that the property be sold, and there is an order directing the receiver upon the payment of $2,400 to execute and deliver to said Matilda P. Goold a good and sufficient deed to the land in question. The bill of exceptions shows that on the 25th day of May, 1909, the receiver reported the sale of the land to Matilda P. Goold, and that he had received therefor the sum of $2,400. It is also shown by the report of the receiver that the proceeds received from the sale of the property were used in payment of the debts of the company. The deed made by the receiver to Matilda P. Goold was recorded on the 26th day of May, 1909. The report of H. L. Goold, receiver, shows the amount paid to him for the land, and which he reports to have paid out in payment of debts against the State Loan & Trust Company, and further shows that all claims against the State Loan & Trust Company had been fully paid and satisfied.

Among the conveyances upon which the plaintiff relies to establish his claim is a quitclaim deed from the State Loan & Trust Company to Stull Brothers, dated August 27, 1896, and filed for record February 23, 1910. The deed recites a consideration of one dollar paid by Stull Brothers to the State Loan & Trust Company.

The bill of exceptions shows a conveyance by Louis Stull and his wife, Grace W. Stull, for the alleged consideration of one dollar, paid September 20, 1898, acknowledged December 20, 1898, and filed for record November 26, 1906, and recorded in miscellaneous record C at page 300. The purported quitclaim deed from Louis Stull and wife

to William Stull undertakes to convey the interest of said Louis Stull in any and all property, "real, personal and mixed, belonging to said firm of Stull Brothers, and to all lands and lots in the states of Nebraska, Iowa, Kansas, and Missouri standing in the name of Louis Stull of said Stull Brothers, acquired by, through or on account of any mortgage or trust deed in favor of said Stull Brothers, Louis Stull, or William Stull, whether as beneficiary, trustee or mortgagee." This instrument is at most a relinquishment by Louis Stull to William Stull of any possible right which the said Louis Stull may have in the kind of property described and within the states mentioned.

William Stull's testimony is not very clear. He speaks of releasing the bank from liability, and gives that as one of the reasons for not filing the deed sooner. It does not appear that the bank assumed to pay the mortgage debt upon the premises. The land is conveyed by George W. Ryan, Jr., and his wife, Nellie W. Ryan, to the State Loan & Trust Company, "subject, however, to one certain mortgage of $700, drawing 7 per cent. interest semiannually in favor of Stull Brothers, of Lincoln, Nebraska, and we do hereby covenant with the said State Loan & Trust Company of Ogalalla, and their heirs and assigns, that we are lawfully seized of said premises; that they are free from incumbrance, except as above mentioned, and we have good right and lawful authority to sell the same; and we do hereby covenant to warrant and defend the title to said premises against the lawful claims of all persons whomsoever." The language used shows no assumption of the mortgage debt. It gives no sufficient reason for not filing the deed of record in a reasonable time. There was no liability on the part of the State Loan & Trust Company to pay this debt; at least there is no evidence tending to establish that fact. Nothing passed from Stull Brothers to the State Loan & Trust Company. Stull did not settle the mortgage debt. He did not release the mortgage. Theodore Goold, the stepson of the defendant, wrote to William Stull about releasing the mortgage. Of course,

this enabled Stull to learn of the death of Mr. Goold. Mr. Goold's death prevented his testimony in this case.

William Stull testified concerning the quitclaim deed of date of August 27, 1896, the deed professing to convey the land in controversy to Stull Brothers by the State Loan & Trust Company for the consideration of one dollar. "Q. Did you have any personal consideration in this deed yourself? A. We had an interest in the mortgage; it was an assignment of coupons; and we had advanced some taxes that we were interested in. Q. Can you explain why the deed was not recorded? A. The correspondence was through a broker to whom we sold the paper, and we did not know the actual or *bona fide* owner of the paper, but these brokers, Haines & Co., the loan had been sold through them to some one, we didn't know to whom, and the interest had been sent to them, the coupons returned to us; they were a reliable house, and they were representatives of the owners of the mortgage. Our attorneys advised us not to record that deed for the reason that, inasmuch as we had nothing in writing from the owner of the mortgage, it would be unsafe for us to file it for record; the owner of the mortgage might repudiate his agent's promises, and then take the position that we had bought the land, and we were under no obligation to pay the debts. Q. Did you know who the real owner and holder of the mortgage was at the time you took the deed? A. No, sir; we did not. Q. Can you state approximately how much of a consideration you had personally advanced in this deed? A. I would say about $100, as near as I can remember. Q. Did you have some correspondence with the parties who paid this consideration, you individually? A. Well, I say the firm; the firm did either while a firm, or I did it later, and it became my property. Q. Did you have any correspondence, or did you notify these brokers of this transaction? A. Yes, sir; and they promised to come forward and take up our advances; that is, refund to us what interest we had in the mortgage. Q. And you were then to furnish a deed? A. Yes, sir; or we were to settle it up some way; they agreed to either buy or sell, and settle the mat-

ter up.  Q.  Did they ever make a settlement?  A.  I do not know whether that offer was ever consummated or not; we have several along these lines; and whether it was ever settled up, I cannot say; it was long drawn out, I know that, so I cannot say."  Cross-examination:  "Q. How much money did you advance to the broker, that was the agent, or the broker of the owner of this mortgage?  A.  I cannot say, I cannot remember now."  Apparently this transaction is very hazy and uncertain in the mind of the witness.  His testimony tends to show that he does not know the owner of the mortgage; that he is uncertain whether he paid anything.  If he paid nothing, he has nothing.  His interest in the matter must depend upon the good faith of the transaction.  The evidence shows that Goold paid $125 to Stull or to Stull Brothers. On examination Stull endeavors to show that the $125 did not apply on the Ryan loan.  Stull testified: "Q.  Answer my question; have you anything from Mr. Goold to show that the money which he remitted you was to be applied upon the two loans other than the Ryan loan, and not upon the Ryan loan?  A.  I do not know that I have. *  *  *  Q.  The amount which you had advanced would have been paid, would it not?  A.  I don't know whether it would have been or not; I don't remember the amount. Q.  You said it was about $100, didn't you?  A.  That is my recollection.  Q.  He remitted you a draft for $125? A.  Yes, sir; we canceled and surrendered the coupons to offset it."

If the foregoing money was paid, then Stull Brothers and William Stull had no interest in the premises because they had received all the money they claimed to have advanced, therefore the district court had a right to find against the plaintiff.  It would seem that it was bound to do so under the evidence.  There was no foreclosure shown of the trust deed made by George W. Ryan and wife to William Stull, trustee.  The said trust deed was dated October 25, 1887, acknowledged October 28, 1887, and filed for record October 28, 1887.  William Stull does not claim

anything for himself by reason of this trust deed, and there is no evidence that he is entitled to anything.

Whether the delay of 13 years, 5 months, and 25 days in filing the quitclaim deed made by the State Loan & Trust Company to Stull Brothers, of the date of August 27, 1888, was for the purpose of waiting until the statute of limitations would apply to the trust deed and make the claim which it secured uncollectible, we have no testimony, and only such suggestions for this unreasonable delay as the evidence may furnish, together with the somewhat uncertain testimony of William Stull, which, however, shows that the trust deed had been sold to some person and that the claim was held by some person. During all these years of the receivership the possession of the land in controversy remained in the receiver until it was conveyed to Matilda P. Goold.

In an action having for its object the declaration of a trust in land in favor of the plaintiff and the quieting of title in him, it is incumbent upon the plaintiff to affirmatively establish an equitable title in himself, and, if he fail to do so, the nature of defendant's title, or the existence of any title in defendant, is immaterial. *Blodgett v. McMurtry,* 39 Neb. 210.

"The rule is that plaintiff must succeed only on the strength of his own title, and not on the weakness of his adversary." 32 Cyc. 1329, and cases cited.

"Irrespective of his title, possession in defendant is a sufficient defense, where plaintiff shows no title in himself." 32 Cyc. 1344, and cases cited.

This case was heard in the district court for Keith county. Its opinion is entitled to consideration. Familiarity with the witnesses who testified, an acquaintance with the parties, and the circumstances attendant upon the case give the findings of that court a value which they might not have in a case further removed from the journeys of the judge.

The State Loan & Trust Company, through its receiver, was in possession of the land in 1909, when the sale was made to Mrs. Goold. These facts would seem to make it

safe for any purchaser to buy the land and to pay his money for it. Stull Brothers permitted Matilda P. Goold to expend $2,400 in buying the land and paying for it. Stull Brothers allowed the sale to be made and the money to be distributed to the creditors. "There is nothing in the relation of vendor and vendee by deed executed and not executory which will prevent the vendor who may remain in possession, or who may afterwards take possession, from claiming adversely to the vendee and relying on the statute of limitations. The covenant of warranty contained in the deed will not defeat title by limitations acquired after the deed. Such title is no breach of the covenant, which cannot be extended to cover future laches of the grantee whereby he loses the title conveyed to him." 1 Cyc. 1040. See, also, 1 Cyc. 1041. The statute of limitations is clearly applicable in this case.

We think that the judgment of the district court is fully justified by the evidence. The testimony of the plaintiff fails to make a case, even if there was no question of adverse possession. The finding of the district court against the plaintiff seems to be warranted because of the weakness of the plaintiff's title, the lack of equity in his petition, and on the ground that the statute of limitations applies, and establishes the right of the defendant under the doctrine of adverse possession. We cannot in any event say that the finding is wrong.

The judgment of the district court is

AFFIRMED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.