## Assignee of Savings Bank of Louisville *v.* The Grand Lodge of Kentucky.

[Abstract Kentucky Law Reporter, Vol. 5—328.]

**Ratification of Official Acts.**

> Where the treasurer of a lodge borrows money for the lodge and his act is approved by resolution of the grand lodge, which authorizes him to borrow money for the lodge thereafter at his discretion, the lodge is liable for the money so loaned which was intended for and was used for its benefit.

APPEAL FROM LOUISVILLE CHANCERY COURT.

October 13, 1883.

Opinion by Judge Hines:

In December, 1877, A. G. Hodges, who was then the grand treasurer of appellee, The Grand Lodge of Kentucky, Masons, in writing informed the Grand Master that it was necessary to borrow $2,000 or $3,000 to meet the ordinary expenses of the late Grand Lodge, that he could borrow the money by depositing as collateral security Masonic Temple stock belonging to the Grand Lodge, and asked his, the Grand Master's, consent that this be done. The latter in reply stated that as the treasury was empty he saw no other means of meeting the present demands, and so far as he could would give his consent to make a deposit of sufficient stock to raise the amount desired.

The Grand Treasurer thereupon, in his official capacity, borrowed from the Masonic Savings Bank the sum of $3,000 and pledged

stock for its payment. The correspondence between the Grand Master and Grand Treasurer was laid before the Grand Lodge at its following annual meeting in October, 1878, and the latter officer also reported that he had borrowed the money.

The Grand Lodge did not at that meeting disown nor disapprove of the action of its officer, the Grand Treasurer, but on the contrary passed the following resolution: "Resolved, that the Grand Treasurer, brother A. G. Hodges, be and he is hereby authorized to borrow such sum or sums of money as may be necessary to meet any deficiency in the treasury to pay the expenses of the present session of the Grand Lodge." Under that resolution the Grand Treasurer borrowed of the Masonic Bank, December, 1878, $4,000, and February, 1879, $800. He borrowed of another bank, March, 1879, $1,000 and on the 24th of October, 1879, he borrowed of the Masonic Bank $2,000.

According to the testimony of Hodges, which is not contradicted, he with the $4,800 paid off the preceding debt of $3,000, and the balance he paid on the general expenses of the Grand Lodge. The $2,000 he swears were borrowed during the session of October, 1879, and with the knowledge of the Grand Lodge and its officers, and the proceeds all applied there and then to pay off the balance due to the delegates, Grand Officers and Past Grand Officers.

On the 4th of November, 1879, after the adjournment of the Grand Lodge, Hodges, for the purpose of making as he states a more favorable loan than he had previously obtained from the Masonic Bank, obtained from appellant's assignor, The Savings Bank of Louisville, the sum of $6,012.50, agreeing to pay interest thereon at the rate of seven and one-half per cent. and giving his note as Grand Treasurer for the sum of $6,500 due in twelve months, and to secure the note he deposited a certificate of one hundred shares of preferred stock in the Masonic Temple Company belonging to appellee. He states that the sum so borrowed from the Savings Bank of Louisville he applied to the payment of the three notes for $4,000, $800 and $2,000 held by the Masonic Bank.

This action was brought by the Grand Lodge of Kentucky against appellant, assignee of the Savings Bank of Louisville, to recover possession of the certificate of stock deposited with the bank by Hodges on the 4th of November, 1879, as collateral security for the payment of the note for $6,500. The answer by appellant is made a counter-

claim and judgment for $6,012.50 and interest; also an enforcement of the lien on the certificate of stock to satisfy the debt prayed for.

Upon final hearing of the action the chancellor rendered judgment requiring appellant to deliver up the certificate of stock claimed by appellee and dismissing the counterclaim. Not only were the various transactions of Hodges in borrowing the money before mentioned reported to and passed upon by the Grand Lodge at its meetings in October, 1878 and 1879, except as to the sum of $2,000 borrowed during the session of 1879, but the whole amount so borrowed except interest was actually expended for the use and benefit of the Grand Lodge and with the knowledge and approval of its officers.

It does not make any difference that there was sufficient means belonging to the Grand Lodge in the hands of the Grand Treasurer to meet its current expenses, and that the money was needlessly and improperly borrowed. His acts were reported to the Grand Lodge, passed upon and practically approved, and, if he had previously misapplied the funds and was at the time of borrowing a defaulter, it was the duty of the Grand Lodge at its annual meeting in October, 1878, to have disavowed his authority to borrow the money upon the credit of the Grand Lodge. Instead of doing so not only was he in October, 1878, re-elected Grand Treasurer, but authority was given to him by resolution to borrow at his discretion in respect to amounts.

There is some doubt whether the successor of Hodges, elected at the meeting of the Grand Lodge in October, 1879, had executed the bond of office required and entered upon the discharge of his duties on the 4th of November, 1879. In our opinion the weight of the evidence shows he had not, and that Hodges was at the time the acting Grand Treasurer; at least he had not delivered up the property and effects of the Grand Lodge, nor had they been demanded of him on that day.

But it makes no difference whether Hodges was or was not authorized on the 4th of November, 1879, to execute the note. The money was loaned by appellant's assignor upon the credit of the Grand Lodge and without notice that Hodges, who had been elected and re-elected Grand Treasurer since 1845, was displaced by another person chosen and qualified as his successor. Appellee has received the use and benefit of the money borrowed by Hodges, and having come into a court of equity seeking relief should be required to do

equity. The chancellor ought to have rendered judgment in favor of appellant for the amount of money borrowed by Hodges and interest, and the stock in controversy should have been adjudged to be sold to satisfy it, if not paid in a reasonable time.

The judgment is therefore *reversed* and cause remanded for further proceedings consistent with this opinion.

*Thomas and John Speed, for appellant.*

*John Mason Brown, for appellee.*